**John L. Juliano (7625)**
**JOHN L. JULIANO, P.C.**
**39 Doyle Court**
**East Northport, New York 11731**
**Tel. (631) 499-9300**
**Fax (631) 462-2532**
**jlj@johnljulianopc.com**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ )
)
)
TANISHA ANDRIEUX,                              )   Case No.:
)
Plaintiff,           )   **VERIFIED COMPLAINT**
)
-against-                       )
)   **Jury Trial Demanded**
)
NORDSTROM, INC., and AYANA HIPPS,              )
)
Defendants.          )
------------------------------------------------------------------ )

Plaintiff, TANISHA ANDRIEUX, by her attorneys, JOHN L. JULIANO, P.C., as and for her Verified Complaint, respectfully alleges:

### PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff, TANISHA ANDRIEUX, has resided at 221 Bellerose Ave, East Northport, County of Suffolk, State of New York, and is a citizen of the United States of America.

2. At all times relevant hereto, the defendant, Nordstrom, Inc., (hereinafter referred to as "Nordstrom") is a corporation or other business entity incorporated under the laws of the State of Washington and is authorized and doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c) and under and by virtue of the laws of the State of New York.

1

3. At all times relevant hereto, Defendant, Ayana Hipps (hereinafter referred to as Hipps), is a natural person residing at 416 Hancock Street, Brooklyn, County of Kings, State of New York, and is a citizen of the United States of America.

4. At all times mentioned herein, Nordstrom was an employer within the meaning of the Americans with Disabilities Act (ADA).

## JURISDICTION AND VENUE

5. Jurisdiction of this cause arises under 28 U.S.C. §§ 1331, 1337, 1343, which together with 42 U.S.C.A. §§12101 et seq. gives this court the power to enforce the provisions of the Title I, Americans with disabilities Act of 1990 (ADA), (42 U.S.C.A. §§ 12101 et seq.) which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C.A. §§ 2000e-5 et seq. and §102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a, and the Federal Rules of Civil Procedure.

6. Jurisdiction of this cause also arises under 28 U.S.C. §§ 1331, 1337, 1343, which together with Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§2000e-5 et seq. gives this court the power to enforce the provisions of Title VII and §102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a, and the Federal Rules of Civil Procedure.

7. This Court has jurisdiction over this action as this matter involves a federal question based upon the Americans With Disabilities Act of 1990 and the Civil Rights Act of 1964 codified at 42 U.S.C.A. §§ 2000e-5 et seq. and §102 of the Civil Rights Act of 1991, Title VII of the Civil Rights Act of 1964, and 42 U.S.C.A. § 1981a.

8. Injunctive and declaratory relief, monetary relief, including, but not limited to, mental and emotional distress, past and future economic loss, compensatory and punitive damages, disbursements, costs and attorneys fees for violation of Plaintiff's rights, is sought

under 29 U.S.C. § 626(b), 28 U.S.C. §§ 2201, 2202, Federal Rules of Civil Procedure, Rule 19, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§, 1981a, 1983, 1988, 2000e, *et seq.*

9. Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 and New York State Executive Law § 290, *et seq.* and other state causes of action.

10. Venue is proper in the Eastern District of New York in that all acts relevant to this suit occurred in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(1)(3).

11. Venue was also proper in that the defendant, Nordstrom is a State of Washington incorporated business authorized and doing business under and by virtue of the laws of the State of New York, within this judicial district within the meaning of 28 U.S.C. §1391 (c)(2).

12. Subject matter jurisdiction is conferred on this court pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§12101 et seq., and 42 U.S.C. §1981A *et seq. Civil Rights Act of 1964 codified at 42 U.S.C.A. §§ 2000e-5 et seq. and §102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a.*

13. Specifically, the plaintiff alleges that defendants wantonly, willfully, recklessly, knowingly and purposefully, acting individually and in conspiracy with each other, sought to deprive plaintiff of employment, position, title and pay through a pattern of discrimination based on plaintiff's disability, harassment, abuse and manipulation of laws, rules and regulations.

14. Defendants have discriminated against plaintiff *inter alia* on the basis of her disability.

15. Said acts were done knowingly with the consent and condonation of Nordstrom, Inc., (hereinafter "NORDSTROM"); and AYANA HIPPS (hereinafter "HIPPS"), Plaintiff's supervisor, in her individual and official capacity, with the express purpose of denying plaintiff her rightful terms, benefits and conditions of employment by reason of her disability and

3

harassment by creating and perpetrating a hostile work environment, and generally violating her civil rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

16. The aforesaid activities were known to officials of "NORDSTROM" and its policy makers, and were accepted and supported as policy, practice and custom.

17. The plaintiff filed a charge of discrimination with the New York State Division of Human Rights, on or about November 10, 2016, and was assigned Case No. 10183471 and a charge of discrimination was contemporaneously and timely filed with the United States Equal Employment Opportunity Commission (EEOC), under charge number 16G-2016-04082

18. More than sixty (60) days after filing with the EEOC, the EEOC issued a Notice of Right to Sue, which is dated June 23, 2017, and which plaintiff received on or about June 26, 2017.

19. Within ninety (90) days after receipt of the EEOC Notice of Right to Sue letter (EEOC Charge No. 16G-2016-04082), plaintiff filed this action.

## COUNT I

**AMERICANS WITH DISABILITIES ACT OF 1990 (ADA) (42 U.S.C.A. §§ 12101 et seq.) WHICH INCORPORATES BY REFERENCE THE CIVIL RIGHTS ACT OF 1964 CODIFIED AT 42 U.S.C.A. §§ 2000e-5 et seq. and §102 OF THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C.A. § 1981a**

20. Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "19" of this verified complaint with the same force and effect as if fully set forth at length herein.

21. At all relevant times, defendant, Nordstrom, was and still is an employer as defined by ADA, and Section 701(b) of Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e(b), and is thus covered by and subject to Title VII and ADA.

22. Defendant, "HIPPS", sued herein in her individual and official capacity, was at all relevant times the manager-supervisor of the Defendant, Nordstrom's store known as Nordstrom Rack, located at 350 Walt Whitman Road, Huntington, County of Suffolk State of New York.

23. Plaintiff was employed by Nordstrom on or about January 2013, as a Customer Service Representative at the Nordstrom Rack, located at 350 Walt Whitman Road, Huntington, County of Suffolk, State of New York.

24. On July 25, 2016, Plaintiff was notified that her employment was terminated.

25. Plaintiff suffers from keloids all over her body which are tough heaped-up scars that rise above the skin. This disability limits the Plaintiff's movements and makes her hypersensitive to touch and pain and inhibiting her from bending over excessively and stretching her arms fully outward.

26. Because of this malady and because she complained about unlawful harassment by her supervisor, Hipps, Plaintiff has been subjected to unlawful discriminatory actions.

27. On or about January 2015, Plaintiff took a medical leave in order to have multiple surgeries on her person to remove the keloids that were all over her body.

28. Upon information and belief, when Plaintiff returned to her employment on August 2015, the Defendant, Hipps, had become Plaintiff's supervisor and Store Manager, and had been informed of Plaintiff's disability while Plaintiff was out on medical leave.

29. Upon her return to work in August 2015, Plaintiff personally informed Hipps and Nordstrom's Human Resources Department of her condition and continued disability, and despite Plaintiff's disability, which was known to Defendants and was open obvious and visually apparent, it did not impede the quality of her job performance.

30. Despite knowledge of Plaintiff's condition, Hipps, without Plaintiff's permission or consent, would repeatedly touch Plaintiff in a hostile and rough manner by grabbing her shoulders and snatching items out of her hands.

31. On several occasions Defendant, Hipps, after being informed that Plaintiff had extreme difficulty in bending, purposely removed items off the counter and placed them on the floor for Plaintiff to bend down to retrieve, causing Plaintiff additional unnecessary severe physical pain and discomfort.

32. These actions and others described hereinafter were done by the Defendants for the purpose of intimidating the Plaintiff and pressuring her to terminate her employ with Nordstrom.

33. Since August 2015 and continually through July 2016, Hipps made demeaning comments to Plaintiff in front of customers, co-workers and privately and constantly threatened Plaintiff with termination.

34. On several occasions, Plaintiff was directed to Defendant Hipps' private office, where Hipps berated Plaintiff and continuously rejected and refused Plaintiff's repeated requests for simple an none costly accommodations such as not requiring her to lift heavy objects due to Plaintiff's Keloid scaring medical condition.

35. Although Plaintiff told Hipps to stop touching her in a hostile and rough manner due to Plaintiff's keloid disability, Hipps ignored Plaintiff's repeated requests and continued physically and verbally harassing and abusing Plaintiff.

36. Plaintiff also complained about Hipps' harassment and physical abuse, assaultive conduct and discriminatory treatment to Nordstrom through official personnel Jennifer Blewitt, the Support Store Manager.

6

37. Plaintiff was advised by Defendant Nordstrom that its Human Resource Managers and Supervisors Ms. Martinez and Ms. Rubin would speak to Hipps about her behavior toward Plaintiff and instructed to refrain from touching Plaintiff.

38. Plaintiff was also advised by Defendant Nordstrom, that Hipps' inappropriate actions were because of Hipps' lack of training.

39. Due to her disability, Plaintiff was required to wear a temporary head scarf to cover her bandages and severe scarring on her face and neck and to protect her wounded skin. The Nordstrom manager required this headscarf to hide Plaintiff's disability from customers and then laughed and ridiculed her temporary "medical" scarf and claimed Plaintiff was a Muslim.

40. On or about March 2016 through April 2016, Hipps advised other managers employed by Nordstrom to follow Plaintiff around the store and write her up for any perceived infractions of any store policies, procedures and/or protocol.

41. On May 29, 2016, Plaintiff requested four days leave from work as a medical accommodation after a significant facial scar became swollen and began to bleed. Plaintiff provided a medical note to Nordstrom whereupon Nordstrom's Human Resources Department demanded that Plaintiff provide her entire private medical history to it which was not a requirement for any other employee.

42. Plaintiff reported these discriminatory actions to Nordstrom, but no action was taken by Nordstrom to stop the discriminatory actions on the part of its agents, servants and employees.

43. The Defendant Nordstrom made no reasonable accommodation for Plaintiff based on Plaintiff's severe keloid condition despite the fact that an accommodation could have easily

been made with little or no effort or economic consequences to Nordstrom or in any fundamental alteration of the practices and procedures at Nordstrom.

44. On July 25, 2016, Plaintiff's employment was terminated by Nordstrom and she was falsely accused of being insubordinate to Defendant Hipps.

45. Although Plaintiff made numerous attempts to address the false and defaming allegations against her, Ms. Martinez, from Nordstrom's Human Resources Department told Plaintiff that Defendant Nordstrom was not changing anything or make any accommodations for the benefit of the Plaintiff.

46. Plaintiff has been treated in a discriminatory manner in that her employment was terminated because of Plaintiff's disability and in retaliation for her complaints of unlawful discrimination.

47. The above mentioned actions and many other actions were done for purpose of tormenting and harassing Plaintiff and to force her to terminate her employ with Nordstrom.

48. The Defendants, jointly and severally have violated the Americans with Disabilities Act (ADA) which covers disability relating to employment.

49. Other than this instant action, Plaintiff has not commenced any other civil action, nor does Plaintiff have an action now pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

50. By reason of the foregoing, the Defendants are liable to the Plaintiff for reinstatement, back pay, front pay, liquidated damages, emotional harm, punitive damages, attorney's fees and interest costs and disbursements of this action.

## COUNT II

### HOSTILE ENVIRONMENT and DISCRIMINATION BASED PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

51. Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "50" above with the same force and effect as if fully set forth at length herein.

52. Defendants jointly and severally made a concerted effort to discriminate and harass the Plaintiff for the purpose of retaliating against the Plaintiff in order to terminate her employment with Nordstrom.

53. In addition to the allegations contained in Count I above mentioned, the following acts are but some but not all of the discriminatory acts harassment perpetrated upon the Plaintiff by the Defendants herein:

a. The uniform worn by employees of the store at the time in question was a short sleeve shirt. Unfortunately, this dress requirement revealed several keloid boils on Plaintiff's body and shoulders, and although Plaintiff requested an accommodation allowing her to wear long sleeved shirts, Defendants refused her request.

b. All employees at the Rack (Nordstrom) knew that they could not touch Plaintiff for fear that the boils would grow larger and would cause her severe pain. Knowing Plaintiff's condition, Defendant Hipps, continually grabbed and touched Plaintiff's body with the knowledge and consent of Nordstrom.

c. Defendants knew of Plaintiff's painful Keloid condition and her restricted ability of bending down or lifting heavy items or cartons during her convalescence. On one particular occasion, Hipps continually removed all boxes off the counter and put them on the floor demanding that Plaintiff bend down to pick them up. This vicious and intentional act was done specifically to cause harm, pain and embarrassment to Plaintiff in order for Defendants to substantiate the Plaintiff's inability to handle her job responsibilities.

d. Nordstrom Human Resources Department unlawfully and illegally demanded Plaintiff sign a blank HIPPA Authorization allowing Nordstrom to obtain a *complete copy* of Plaintiff's medical records, even though Nordstrom Human Resources knew it was illegal to ask for such an authorization and no other employee was requested to give HIPPA Authorizations of their entire medical history other than Plaintiff.

e. Although Plaintiff made numerous complaints to Nordstrom about the harassment perpetrated upon her by Nordstrom's supervisor, Hipps, regarding her [Hipps] touching and intimidating behavior towards the Plaintiff, Nordstrom's Human Resources Department refused to take any action concerning this abhorrent treatment, and was told to report this incident to Nordstrom's Maryland Office of Human Resources which Department eventually advised Plaintiff that Nordstrom would "take care of it".

f. Hipps' physical touching of Plaintiff was recorded on video, and when Plaintiff requested a copy of the video, Nordstrom denied her request.

g. Plaintiff was called into Hipps' office three (3) to four (4) times per shift and was yelled at and harassed by supervisor Hipps. On numerous occasions, Hipps would close the door and scream at Plaintiff loud enough for all other employees to hear. Hipps screamed at Plaintiff telling her that she was unqualified, no one wanted her at Nordstrom, and that she should quit or she would be fired.

h. Plaintiff was screamed at daily in front of customers, other employees and other managers by Hipps and although Plaintiff reported these daily "lashings" to Nordstrom Human Resources Department as required by the employers manual and protocols, Nordstrom did nothing to correct the situation.

I. Under a ruse of a so called "open door" policy, Nordstrom attempted to control any employee including the Plaintiff who made complaints against the Defendants so that retaliation against the Plaintiff and/or any other employee similarly situated could be excused while the harassment becomes uncontrollable and more pervasive. Each time Plaintiff complained to Human Resources of requiring Plaintiff to attend private meetings of "humiliation and hatred", Plaintiff was told by Defendants that they were "coaching" Plaintiff to make her a better employee. This ruse was continuously reiterated by Nordstrom, which covered up and allowed Hipps to continually berate and harass Plaintiff, both physically and verbally in retaliation for her complaints.

j. Contrary to onslaught of complaints against Hipps, Plaintiff was told by Nordstrom that enduring the continued harassment was a condition of her employment. If she wished to continue to work at Nordstrom, then Plaintiff would have to accept the "coaching" from the untrained Store Manager, Hipps.

k. Other acts of hostility and assaultive conduct by Hipps against Plaintiff include pulling bags out of Plaintiff's hands in front of customers and verbally screaming at her; grabbing a cart that Plaintiff was bringing to the storeroom to obtain supplies for Customer Service and blocking Plaintiff from moving and holding onto the cart to prevent her from going further.

l. **Other** managers were told to harass Plaintiff and Hipps was caught on several occasions hiding among the clothing racks staring at Plaintiff while Plaintiff was performing her duties and responsibilities as an employee of Nordstrom.

54. Nordstrom knew and should have known that the conduct of the store manager, Hipps, was intimidating, hostile and abusive to Plaintiff.

55. The Defendants knew these acts were verbally and physically abusive to the Plaintiff and were done for the purpose of attempting to force the Plaintiff to leave her employment and were extremely physically and emotionally harmful to her.

56. Plaintiff was physically and emotionally terrified of Hipps, Nordstrom's supervisor and her store manager, and Defendants continually embarrassed Plaintiff in front of customers or other employees.

57. The above mentioned acts were reported to Nordstrom by Plaintiff, her sister and other employees, but were ignored and covered up by Nordstrom.

58. The pattern of severe and pervasive conduct and the incredibly hostile work environment detailed above continued from the time that Hipps became Plaintiff's supervisor August 2015 through the date that Plaintiff was terminated on July 25, 2016.

59. Despite Plaintiff's complaints to Nordstrom senior management, no corrective action was ever taken with respect to Hipps.

60. The Defendant, Nordstrom has not taken any corrective action against the Defendant, Hipps, and has refused to address Hipps' conduct.

61. Nordstrom and its agents, servants and/or employees have discriminated against Plaintiff based on her disability, and has allowed an extremely hostile work environment to exist for a long period of time without taking any measures to correct such conduct of its supervisors.

62. Plaintiff has been intentionally and willfully discriminated against by Defendants on the basis of her disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

63. As a result of said Defendants' discriminatory and wrongful conduct alleged herein, which conduct was intentional, willful and without justification, Plaintiff was deprived of her rights and has incurred damages in an amount to be proved at trial.

64. As a result of said Defendants' discriminatory and wrongful conduct alleged herein, Plaintiff is now suffering, and will continue to suffer, irreparable harm and injury from said Defendants' actions, policies, practices and customs as set forth herein.

65. As a result of said Defendants' discriminatory and wrongful conduct alleged herein, Plaintiff has suffered extreme mental anguish, emotional distress, humiliation and embarrassment.

66. By reason of the foregoing, the Defendants are liable to the Plaintiff for back pay, front pay, liquidated damages, pain and suffering for emotional distress, punitive damages, attorney's fees, costs and disbursements.

## COUNT III

## WRONGFUL TERMINATION and DEFAMATION

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "66" with the same force and effect as if fully set forth at length herein.

68. Plaintiff was terminated from her employ by Nordstrom, after she requested simple accommodations to allow her to heal from her recent Keloid surgery.

69. As hereinbefore alleged, Defendant Hipps and Nordstrom employees made disparaging and defaming comments about Plaintiff's medical disability and her work performance.

70. The disparaging and defaming comments were both verbal and written and were untrue.

71. The Defendants knew or should have known that the aforesaid comments were untrue, but jointly and severally acted in concert to disparage and defame Plaintiff in an attempt to cause her to quit her employ with Nordstrom and for the further purpose of justifying Nordstrom's wrongful termination of the Plaintiff.

72. Plaintiff has been damaged as a result of Defendants' defamation and wrongful termination of her in a sum to be determined by a jury in this action.

### COUNT IV

### NEW YORK EXECUTIVE LAW, SECTION 296

73. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "72" with the same force and effect as if fully set forth at length herein.

74. Plaintiff has been intentionally and willfully discriminated against by Defendants on the basis of her disability in violation of section 296 of the New York Executive Law ("Human Rights Law").

75. As a result of said Defendants' discriminatory and wrongful conduct alleged herein, which conduct was intentional, willful and without justification, plaintiff was deprived of her rights and has incurred damages in an amount to be proved at trial.

76. As a result of said Defendants' discriminatory and wrongful conduct alleged herein, Plaintiff is now suffering, and will continue to suffer, irreparable harm and emotional injury from said Defendants' actions, policies, practices and customs as set forth herein.

77. As a result of said Defendants' discriminatory and wrongful conduct alleged herein, Plaintiff has suffered and continues to suffer extreme mental anguish, emotional distress, humiliation and embarrassment.

78. Based on the foregoing, Plaintiff charges the Defendants with an unlawful discriminatory practice relating to employment because of disability, and retaliation in violation of the New York State Human Rights Law (Executive Law, Article 15) Section 296.

79. By reason of the foregoing, the Defendants are liable to the Plaintiff for back pay, front pay, liquidated damages, emotional distress, mental anguish, humiliation, embarrassment, punitive damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands the following relief against Defendants:

A. An award of actual damages, in an amount to be proved at trial, for loss of wages, benefits and promotional opportunities, including an award of back pay and front pay for loss of past and future salary and benefits;

B. An award of damages in an amount to be proved at trial, to compensate Plaintiff for mental anguish, extreme emotional distress, humiliation and embarrassment;

C. An award of damages in an amount to be proved at trial, to compensate Plaintiff for her wrongful termination;

D. An award of damages in an amount to be proved at trial, to compensate Plaintiff for defamation of her character and person;

E. An award of punitive damages in an amount to be proved at trial;

F. Injunctive relief, including, but not limited to clearing of Plaintiff's personnel file of any disciplinary actions and fraudulent papers, and a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiff's rights;

G. An award for disbursements and costs of the action brought herein;

F. An award of attorneys' fees pursuant to 42 U.S.C. § 1988; and,

H. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of this action.

Dated: East Northport, New York
June 30, 2017

                                                     JOHN L. JULIANO, P.C.

                                       By: JOHN L. JULIANO, ESQ. (7625)
                                       Attorney for Plaintiff
                                       TANISHA ANDRIEUX
                                       39 Doyle Court
                                       East Northport, New York 11731
                                       Tel. No.: (631) 499-9300
                                       Fax No.: (631) 462-2532
                                       Email: jlj@johnljulianopc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
**TANISHA ANDRIEUX,**

                             Plaintiff,

     -against-

**NORDSTROM, INC. and AYANA HIPPS,**

                           Defendants.
------------------------------------------------------------------------X

## INDIVIDUAL VERIFICATION

**TANISHA ANDRIEUX,** being duly sworn, says:

That deponent is a plaintiff in the above captioned matter; that deponent has personally read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated on information and belief, and that as to those matters deponent believes it to be true.

                                                      _____
                                                      TANISHA ANDRIEUX

Sworn to before me this
30 day of June, 2017

_____
Notary Public

MYRIAM E. RODRIGUEZ
Notary Public, State of New York
No. 5006949
Qualified in Suffolk County
Commission Expires 8/12/2019